IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| KATHRYN ALANNA TWILLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 5:16-cv-1163-TMP |
| ) | |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM OPINION**

## I. Introduction

The plaintiff, Kathryn Alanna Twilley, appeals from the unfavorable decision of the Commissioner of the Social Security Administration ("Commissioner").[1] The plaintiff challenges the ALJ's finding that she was not disabled. Ms. Twilley timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). The parties have consented to the jurisdiction of the undersigned magistrate judge

---

[1] The court takes judicial notice that Nancy A. Berryhill is now the Acting Commissioner, and the Clerk is DIRECTED to change the style of the case to reflect this change.

pursuant to 28 U.S.C. § 626(c). Accordingly, the court enters this memorandum opinion.

Ms. Twilley was 40 years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has a college education, including a master's degree. (Tr. at 41). Her past work experience is as a fifth-grade teacher. (Tr. at 43). Ms. Twilley claims that she became disabled on March 1, 2013, because of lupus, mitral valve prolapse, hypertension, Bell's palsy, fibromyalgia, irritable bowel syndrome ("IBS"), and cervical degenerative disc disease. (Tr. at 157).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If she is, the claimant is not disabled and the evaluation stops. *Id*. If she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id*. The decision depends upon the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If

the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, she will be found disabled without further consideration. *Id.* If she does not, a determination of the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e). Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments. 20 C.F.R. § 404.1545(a).

The fourth step requires a determination of whether the claimant's impairments prevent her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do her past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience, in order to determine if she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant

can do other work, the claimant is not disabled. *Id.* The burden of demonstrating that other jobs exist which the claimant can perform is on the Commissioner, but once that burden is met, the claimant must prove her inability to perform those jobs in order to be found to be disabled. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

Applying the sequential evaluation process, the ALJ found that Ms. Twilley was not under a disability within the meaning of the Social Security Act since March 1, 2013, the alleged onset date. (Tr. at 31). He determined that Ms. Twilley has not engaged in substantial gainful activity since the date of the alleged onset of her disability. (Tr. at 21). According to the ALJ, claimant's systemic lupus, arthralgias, and depression are considered "severe" based on the requirements set forth in the regulations. (*Id.*) He further determined that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 23). The ALJ found Ms. Twilley's allegations regarding the intensity, persistence, and limiting effects of her symptoms to be "not entirely credible." (Tr. at 26).

The ALJ further determined that the claimant has the residual functional capacity to perform a range of light work. (Tr. at 25). The ALJ further found that the claimant should be subject to exertional limitations of being able to lift and carry

twenty pounds occasionally and ten pounds frequently, and that she can stand/walk for six hours during an eight-hour work day with normal breaks, and can sit for six hours during an eight-hour work day with normal breaks. (Tr. at 25). In addition, the ALJ stated that the plaintiff could push and pull hand and foot controls with the same limitations as for lifting; that she can climb ramps and stairs occasionally, but that she can never climb ladders, ropes, or scaffolds; that she can balance and stoop frequently; and can occasionally kneel, crouch, and crawl. (*Id.*) He stated that she should avoid concentrated exposure to extreme heat and cold, and cannot perform a job involving vibration. (*Id.*) She should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. (*Id.*) She should avoid concentrated exposure to unprotected heights and direct sunlight. (*Id.*) The ALJ also imposed the following nonexertional limitations: that she can understand and remember simple instructions and maintain attention and concentration sufficiently to carry out simple tasks during an eight-hour workday with[out] the need for special supervision or extra rest breaks; contact with the general public, co-workers, and supervisors should be occasional; changes in the workplace should be infrequent and well-explained. (Tr. at 25).[2]

---

[2] Although the ALJ's opinion states that Ms. Twilley could work "with the need for special supervision," plaintiff has not disputed the Commissioner's assertion that the reference in

According to the ALJ, Ms. Twilley is unable to perform her past relevant work; and she was a "younger individual age 18-49" on the alleged onset date. (Tr. at 30). The ALJ further found that jobs exist in significant numbers in the national economy that the claimant could perform. (Tr. at 31).

## II. Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent

---

the opinion was a typographical error. The Commissioner's assertion is supported by a hypothetical question that the ALJ asked the vocational expert at the hearing, which set forth the condition that there would be "no need for any special supervision or ... extra rest breaks." (Tr. at 59).

conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this court finds that the evidence preponderates against the Commissioner's decision, the court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

**III.  Discussion**

Ms. Twilley alleges that the ALJ's adverse decision should be reversed and remanded because the ALJ: (1) failed to give proper weight to the opinion of an examining psychologist, Dr. Barry S. Wood, and a non-examining reviewer, Dr. Robert Estock; and (2) failed to consider the plaintiff's exemplary work history when evaluating her credibility. (Doc. 16). The Commissioner asserts that the ALJ properly evaluated the evidence from Drs. Wood and Estock regarding her

psychological conditions, and that the ALJ's credibility determination comported with the applicable legal standards. (Doc. 17).

## A. Psychological Assessments[3]

Under prevailing law, a treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 1997)(internal quotations omitted). The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). "Good cause" exists for an ALJ not to give a treating physician's opinion substantial weight when the "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) ... was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th

---

[3] The plaintiff does not raise any issue regarding any weight given to the treating doctors who saw her regularly for her lupus, gastrointestinal issues, and any other physical ailments. Accordingly, it is only the ALJ's assessment of plaintiff's mental disorder of depression that is at issue here.

Cir. 2004) citing *Lewis*, 125 F.3d at 1440; *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991)(holding that "good cause" exists where the opinion was contradicted by other notations in the physician's own record). The opinion of an examining physician, who has examined the claimant only once, however, is not due the same deference as the opinion of a treating physician. *Romeo v. Commissioner of Social Security*, 686 Fed. App'x 731, 733 (11th Cir. 2017), citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1988).

The law only requires the ALJ to provide "sufficient reasons for discounting" the opinion of a physician who examined the claimant only once, and to state "with particularity the weight given to different medical opinions and the reasons why some were given more weight than others." *Romeo*, 686 Fed. App'x at 733. Moreover, an opinion or conclusion that a claimant would "find it difficult to hold a full-time job" is an issue that is reserved to the Commissioner and is not entitled to any weight. 686 Fed. App'x at 733 (citing 20 C.F.R. § 404.1527(d)(1)). The opinion of a reviewing physician, who has never examined the claimant, generally is entitled to even less weight, but can be bolstered when it is "consistent with the record as a whole" or with the medical opinions of a treating or examining physician. 20 C.F.R. § 404.1527(e)2(ii). In the case of any treating, examining, or consulting physician, however, a medical opinion can be discounted when the

evidence supports a contrary finding, or when the opinion is conclusory and inconsistent with the record as a whole. 686 Fed. App'x at 732.

### 1. Weight Given to Dr. Wood's Opinion

The ALJ gave significant weight to Dr. Wood's assessment that the plaintiff would be distractible because of her mood issues, but that she still was able to understand and recall instructions. (Tr. at 28). The ALJ, however, discounted Dr. Wood's general conclusions regarding Ms. Twilley's ability to work, specifically noting that such opinions are "a decision for the commissioner," and that Dr. Wood was "quite conclusory, providing very little explanation of the evidence relied on." (Tr. at 28). The ALJ further detailed that Dr. Wood had apparently accepted all of Ms. Twilley's subjective reports of symptoms and limitations as fact without comparing those reports to the medical evidence, without noting that she had never sought or received mental health treatment, and without reconciling his own observations that she was alert and oriented. (Tr. at 28). The ALJ's decision demonstrates specific reasons for according Dr. Wood's opinion little weight.

A careful review of the medical record also confirms that the ALJ's discounting of Dr. Wood's opinion is supported by substantial evidence that the opinion is contradicted by other medical evidence. For example, although the plaintiff alleges her onset date of disability to be March 1, 2013, her examination by

Dr. Chatham on March 13, 2013, assessed her psychiatric condition as "Cooperative, Appropriate mood & affect, Normal judgment." (Tr. at 217) Similarly, on June 20, 2013, Dr. Landy at Cullman Gastroenterology assessed her psychological condition as "oriented time 3 normal insight affect appropriate and short term memory intact." (Tr. at 224) On other occasions, although Dr. Chatham referenced her medical history as involving "Anxiety, Depression," he found her to be "alert and oriented." (Tr. at 249, 253, 259) In November of 2013, Nurse Practitioner Stanhope noted that claimant was "Cooperative," with "Appropriate mood & affect." (Tr. at 390) At that same time, Dr. Latovitz noted that Ms. Twilley's depression was "Well controlled on medication." (Tr. at 414) In May 2014, Dr. Chatham noted that plaintiff's condition was one of "depressed moods that come and go," and that plaintiff reported "her affect has not been down, not despondent or suicidal." (Tr. at 357). In sum, there was substantial medical evidence in the record that the plaintiff's depression was not debilitating. Accordingly, the ALJ did not commit reversible error.

### 2. Weight Given to Dr. Estock

As discussed *supra*, different types of medical sources are entitled to differing weights. The opinion of a treating physician usually is entitled to the greatest weight. A non-treating physician or psychologist, who has examined the patient

but does not treat the patient, is entitled to less weight. The least weight is given to a non-examining medical source, who may provide an opinion based on the record but who has not examined the patient. 20 C.F.R. § 404.1502. Even so, any medical source's opinion can be rejected where the evidence supports a contrary conclusion. *See, e.g., McCloud v. Barnhart*, 166 Fed. App'x 410, 418-19 (11th Cir. 2008). The plaintiff asserts that the ALJ did not give sufficient weight to the opinion of Dr. Estock, a non-examining state agency psychiatrist, who stated that the plaintiff would benefit from a flexible work schedule and "would be expected" to miss one to two days of work per month.

The ALJ gave significant weight to some of Dr. Estock's opinions, but gave no weight to the doctor's conclusion that Ms. Twilley "would be expected" to miss one to two days of work per month. (Tr. at 29). The ALJ noted that the opinion was "inconsistent with the record as a whole and entirely speculative." (Tr. at 29).

The ALJ's decision is based upon an overall view of the medical records, in which Ms. Twilley's self-described severe symptoms of any mental disorder are not well documented and are inconsistent with the plaintiff's extensive medical records from her treating physician, Dr. Walter Chatham. On her frequent and regular visits to Dr. Chatham, a rheumatologist, she often reported fatigue, but almost never described serious depression. In May of 2014, Dr. Chatham reported that Ms.

Twilley complained of fatigue and rash. (Tr. at 357). In August of 2014, he noted complaints of fatigue, malar rash, and arthralgias, with severe ankle swelling. (Tr. at 350). He further noted on both occasions that she had "[d]epressed moods that come and go, but general[ly] reports her affect has not been down, not despondent or suicidal." (Tr. at 350, 357). During the month of her alleged onset, she saw Dr. Chatham and complained of "increasing pain, stiffness and swelling in hands" but did not mention any issues with mood or depression. (Tr. at 267-69). The doctor reported that she was "[a]lert and oriented" and in "[n]o acute distress"; he further noted: "Cooperative. Appropriate mood & affect. Normal judgment." (Tr. at 269). It appears that she never sought or received mental health treatment or counseling of any sort, and did not even receive any medication for depression until July of 2013, four months after her alleged onset date.[4] On July 10, 2013, Dr. Chatham prescribed Pristiq, an anti-depressant, after she reported at her annual examination that she had been "feeling depressed lately with crying spells." (Tr. at 252).[5] Just a year later, she exhibited "cooperative" behavior, with "appropriate

---

[4] While the plaintiff did receive clonazepam, which is frequently used to treat anxiety, her medical records make clear that it was prescribed to her for help in sleeping and was taken only at bedtime. (*See, e.g.*, Tr. at 216).

[5] The doctor did note "resume Pristiq," but it is not clear when, if ever, she had taken that medication before July 2013.

mood & affect." (Tr. at 413). Her depression was noted to be "well controlled on current medication." (Tr. at 414).

In sum, the ALJ considered the reports of Drs. Wood and Estock, and accorded them little weight because they were inconsistent with the medical records and the reports of treating physicians, and because they were speculative. The ALJ clearly articulated specific reasons for the limited weight he gave to the opinions, and therefore the determination was based upon substantial evidence and was in accordance with the governing law.

### B. Credibility Assessment

The plaintiff challenges the ALJ's determination that Ms. Twilley was "not entirely credible" on the basis that the ALJ did not consider plaintiff's exemplary work history before making that credibility assessment. Plaintiff's counsel argues that, because Ms. Twilley demonstrated "earnings for every single quarter" for twenty-four consecutive years, this fact "argues against the possibility of malingering and certainly was required to be considered in the ALJ's credibility assessment." (Doc. 16, p. 18). The Commissioner asserts that the ALJ's decision need not explicitly discuss the work history in relation to the credibility assessment.

The court agrees that the ALJ need not discuss every factor that is weighed into a credibility finding. Although 20 C.F.R. § 404.1529(c)(3) states that the ALJ

will "consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating or nontreating source ...," there is no authority for the position that a history of steady work precludes any negative assessment of credibility where there is other evidence to support the credibility finding. The cases cited by the plaintiff—all from other circuits—simply demonstrate that a financial motivation to remain employed and a history of doing so does not support a finding of malingering. *See, e.g.*, *Allen v. Califano*, 613 F.2d 139, 147 (6th Cir. 1980)(holding that where the plaintiff, the sole wage-earner in the low-income household, "did work at a factory job for many years in between childbirths and the astonishing series of operations . . .she had obviously demonstrated a considerable inclination toward employment"). The plaintiff does not cite, and the court does not find, any cases in which the Eleventh Circuit Court of Appeals has held that a history of steady employment must be discussed by the ALJ as a factor in the credibility determination, or that such a work history compels a conclusion that the plaintiff is entirely credible.

The fact that the ALJ did not discuss the work history specifically is not sufficient reason for the court to assume, as plaintiff urges, that the ALJ ignored that work history. As the Commissioner points out, the ALJ need not explicitly address

every factor in his determination. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Furthermore, while the factors must all be considered, no single factor is conclusive. The claim that the ALJ's decision is due to be reversed because the credibility determination did not include a specific discussion of the plaintiff's employment history is without any foundation in law; therefore, the ALJ's determination relating to the plaintiff's credibility is based on substantial evidence and is in accordance with the governing law.[6]

## V. Conclusion

Upon review of the administrative record, and considering all of Ms. Twilley's arguments, the Commissioner's decision is AFFIRMED and the action is due to be DISMISSED WITH PREJUDICE. A separate Order will be entered.

DATED the 28th day of September, 2017.

_____
T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE

---

[6] The ALJ did discuss his reasons for a negative credibility finding, and therein adequately explained that the treatment records did not support a finding that Ms. Twilley's pain and symptoms were as severe as alleged. (Tr. at 26). Moreover, plaintiff does not dispute that the ALJ had the information regarding Ms. Twilley's earnings record, and that the subject of her employment history was discussed during the hearing. There is no indication that the ALJ discounted her work history; it is simply true that he did not explicitly address her work history.